[No. 30676. Department Two. January 14, 1949.]

# T. A. VEBLEN, *as Receiver, Appellant,* v. A. H. FOSS, *Respondent.*[1]

*Shorett, Taylor & Revelle*, for appellant.

*Venables, Ballanger & Clark*, for respondent.

[1]Reported in 201 P. (2d) 719.

SCHWELLENBACH, J.—This is an appeal from a judgment decreeing that A. H. Foss is the owner of certain personal property and entitled to the possession thereof free and clear of any claim of the insolvent corporation, and enjoining the receiver from selling the same.

T. A. Veblen was, on March 16, 1948, appointed receiver of Hollywood Somoa Jersey Dairy Farms, Inc., an insolvent corporation. As such receiver, he had petitioned the court for an order to sell all of the assets of the corporation. In response to an order to show cause why the property should not be sold, Mr. Foss filed a petition, asserting ownership of the property involved in this action, asking that the receiver be restrained from selling the same and that it be released to him.

A. H. Foss is a sole trader, doing business as the Northwest Dairy Supply Co., a distributor of ice cream equipment. In August, 1947, he received a telephone call from Earl F. Hubbard relative to the purchase of a considerable amount of equipment, and sent Richard Behm, his salesman, to see Hubbard. As a result of these negotiations, ice cream equipment of the total value of $7,601.67 was sold to E. F. Hubbard and W. E. Delaney, who were operating the Hollywood Somoa Jersey Farms, near Woodinville. Delivery extended from September, 1947, to January, 1948. There were twelve sales slips indicating deliveries of various articles of equipment during that period. Delivery was not all made at one time because the seller did not have it in stock. Some of it had to be manufactured specially. As the equipment was delivered, it was receipted for by either Mr. Delaney or Mr. Hubbard.

It was understood that payment was to be made when all of the deliveries were completed. This occurred in the early part of January, 1948. Demands were then made for payment, which were put off from day to day with promises to pay. When it was seen that payment was not forthcoming, a conditional sales contract was entered into on January 29, 1948, covering all of the equipment delivered. The contract was between Northwest Dairy Supply Co. and E. F. Hub-

bard and W. E. Delaney of Hollywood Somoa Farms, vendee, and was signed, "Hollywood Somoa Farms, Earl F. Hubbard, Sec.-Treas." It recited a purchase price of $7,-601.67 to be paid, $2,801.67 cash, and $800 per month until paid in full. The down payment was represented by three postdated checks, none of which was ever paid.

Most of the invoices for equipment delivered were made out to "Hollywood Somoa Farms." However, the first three invoices, together with a statement of account, were made out to "Hollywood Somoa Farms, Inc." Foss's stenographer testified that this was her error. All of petitioner's witnesses testified that they had no knowledge of a corporation, and that all of their dealings were with Delaney and Hubbard individually.

Originally, Delaney and one Morrow operated as a partnership under the name "Somoa Jersey Farms." Later, they leased the "Hollywood Farm" from Phil MacBride and added "Hollywood" to their name. They entered into a lease with Mr. MacBride. In May, 1947, Morrow sold his interest to Hubbard, who then insisted on incorporating under the name, "Hollywood Somoa Jersey Dairy Farms, Inc." When Morrow sold out, he assigned his interest in the lease to Hubbard. The lease between Phil MacBride, as lessor, and Hubbard and Delaney, as lessees, remained without change after the corporation was organized. Prior to the incorporation, the partnership had funds in the University National Bank under the name, "Hollywood Somoa Jersey Farms." After the incorporation, this account remained in the same name.

Subsequent to the incorporation, Hubbard, Delaney, and H. A. Dent, as partners, under the name, "Somoa Feed Company," bought two thousand tons of hay, at an average of nineteen dollars per ton, and sold it to different concerns and individuals. They also fed part of it to the cattle owned by the corporation which was taken over by the receiver in this action.

At the close of the hearing, the trial court announced that it would rule in favor of the receiver. Upon further argu-

ment, the court changed its mind and concluded that title was still in the respondent, and ordered delivery of the equipment to him.

On the facts, we feel that respondent dealt with Hubbard and Delaney as individuals, and not with the corporation. Apparently, the corporation was an "ace in the hole," something to fall back upon in the event they got into difficulties. They, as individuals, bought this equipment.

In order for respondent to maintain this action against the receiver, the title to the personal property involved must be in him. If, because of what has heretofore been related, the title to the property passed from respondent to the purchasers, he has no cause of action.

Rem Rev. Stat., § 5836-18 [P.P.C. § 859-3], provides:

". . . (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Rem. Rev. Stat., § 5836-19 [P.P.C. § 859-5], provides:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . .

"Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

"(2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section 5836-20. This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the

goods are marked with the words 'collect on delivery' or their equivalents. . . ."

Rem. Rev. Stat., § 5836-20 [P.P.C. § 859-7], provides:

*"Reservation of right of possession of property, when goods are shipped.* (1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer. . . ."

■ The applicable provisions of the uniform sales act relative to passage of title will depend upon whether the contract was for the sale of specific goods or of unascertained or future goods. The testimony shows that delivery could not be made at one time because the seller did not have all the equipment in stock. It was necessary to have some of it manufactured specially for the buyer's needs. We think it is clear that the sale was of unascertained or future goods. Only a small portion of the equipment was ready for delivery when the contract was made. Some of it was yet to be manufactured for the buyer; a considerable portion of it had to be purchased by the seller before he could resell it to the buyer under the contract.

■ There is no dispute that, under the oral contract, payment was to be made upon delivery of the final items of equipment. No credit was contemplated; the transaction was to be a cash sale. Under a cash sale, title, possession, and the use and enjoyment of the goods passes upon delivery to the buyer in return for payment of the price.

■ The situation presented here involves delivery of possession to the buyer, together with the use and enjoyment of the goods, the condition of payment not having been met. Was the condition of payment waived by the delivery?

"The cases which present difficulty are where the seller has voluntarily parted with possession and for a purpose other than the temporary one of examination or the like,

but [in] the belief that whatever remains to be done by the buyer will be done. It is universally admitted in the decisions that delivery under such circumstances is at least evidence of a waiver. This is equivalent to saying that the delivery is evidence of a transfer of the property in the goods unconditionally." 2 Williston on Sales (Rev. ed. 1948) 339, § 346.

When we consider the conduct of the parties, their intention is perfectly clear. Respondent voluntarily parted with possession, as each delivery was made, not for the purpose of examination by the purchasers, but in the belief that Hubbard and Delaney would pay upon completion of deliveries. As each delivery was made, an invoice of the equipment, shipped at the buyer's risk, was sent to the purchasers. Furthermore, statements of account were sent from time to time. In the record is the following:

Statement of Account

NORTHWEST DAIRY SUPPLY Co.

611 Western Avenue—Phone Main 3552

Seattle, 4, Washington

October 31, 1947

Hollywood Somoa Farms, Inc.
715-1331 Third Ave. Bldg.
Seattle, Wash.

| Bills Not Paid When Due Are Subject to Sight Draft Without Notice | STRICTLY NET— NO DISCOUNT | 10% Interest Charged on Overdue Accounts |
|---|---|---|
| September 16 | $ 1,254.90 | |
| October 13 | 1,957.98 | |
| October 24 | 182.97 | |
| | $ 3,395.85 | |

Mr. Behm testified:

"THE COURT: Do I understand that up until that time the understanding was that they were buying those things outright but upon credit, to be paid in full upon final delivery; and after final delivery, then you got the three checks post-dated? THE WITNESS: Yes. THE COURT: And it was the understanding at that time that the goods were sold to them, that they were the owners of the goods but owed for them? THE WITNESS: Up until that time, yes."

At the time the so-called conditional sales contract was executed, the sale had already been consummated. Title had passed; and the former was of no force or effect. Respondent's own witness testified that the buyer was the owner of the goods at the time of respondent's ineffectual attempt to protect himself. This agreement neither transferred title back to the seller by its terms, nor did it operate to reinvest title in him. Respondent, by his own actions, had made himself merely a creditor of the buyer.

The title to this equipment having passed from respondent when the deliveries were made, it follows that he is not now entitled to its possession, and has no right, in this action, to restrain the receiver.

The judgment is reversed.

MALLERY, ROBINSON, SIMPSON, and HILL, JJ., concur.

---

February 21, 1949. Petition for rehearing denied.